Nott, J.,
delivered the opinion of the court:
The questions in this case relate entirely to the construction of a written contract which was entered into by the defendants through the commanding officer at Bock Island on the one part and the claimants on the other.
Its subject-matter was the. excavation of earth and rock in the bottom of the side channel of the Mississippi which forms Bock Island. The area of excavation was prescribed only as being “mot more than 100 yards wide;” but until the water which, when the contract was made, covered the channel could be withdrawn, the precise place for the work could not be designated. Nor until the channel should be laid bare, and the area of excavation be cross-sectioned and leveled, could the quantity of earth and rock to be removed be known. The contract named a season within which the work should be carried on, viz, between the 1st August and the 31st December, but it did not assign all of that season to the claimants as the time for performance. On the contrary, it provided that the work should be done “at such times as the commanding officer may direct,” with a restriction, however, that the “time allowed for the work after the pool bed is bared is to bo long enough to *66 allow at least one clay for every 400 cubic yards of rock to be removed.” On the one hand the contract bound the Government to make the bed of the pool “ as dry as is reasonably practicable by putting a coffer-dam across the head of the pool,” and on the other it bound the claimants to do their work of excavation and removal in the time prescribed.
The season within which the work was to be done was more than half gone when the area of excavation was cross-sectioned and turned over to the claimants. It then appeared that 18,800 cubic yards of rock were to be removed, -which, according to the terms of the contract, would allow to the claimants as the time of performance forty-seven working days. The language of the contract, so far as it involves construction, is in these words:
“ That the parties of the first part do hereby contract and engage with the said United States to quarry, in the bed of the llock Island Arsenal water-power pool, at such place as may be designated, such quantities of rock as the commanding officer of the Eock Island Arsenal may require, not less than fifteen thousand nor more than thirty thousand cubic yards, and the deposit of sand and mud on the rocks to be excavated, and to haul the same and dump it on the Eock Island shore above high-water mark. The rock and deposit are to be taken from a channel not more than one hundred yards wide, to be cut east of the arsenal bridge, to Moline, and nearly parallel to the island shore, and about one hundred yards therefrom. The depth and length of the channel are .to be what the commanding officer of Eock Island Arsenal may require. The rock excavated from below the required depth is not to be counted in the measurement.
“ The United States is at its own expense to bare and dry the b'd of the pool as dry as is reasonably practicable, by putting a coffer-da in across the head of the pool from the wing-dam to the Illinois shore, and by keeping open the water-ways in Benham’s Island Dam anil the dams below the bridge. The work is to be done during low water, between August 1st and December 31st, 1881, at.such times as the commanding officer of Eock Island Arsenal may direct, but the, time allowed for the work after the pool bed is bared is to be long enough to allow' at least one day for every four hundred cubic yards of rock to be removed, not counting «undays.
“ For each solid cubic yard of rock, and each solid cubic yard of deposit herein contracted for, which shall be excavated and removed as aforesaid, there shall be paid by the United States to the said E. H. Skelsey & Co., their heirs, executors, or administrators, proper vouchers made in approved form, and duly authenticated by proper officers of the Ordnance Depart *67 ment, tbe sum of one dollar and twenty-four and one-balf cents ($1.24J) for tbe rock, and tbirty-eigbt and one-balf cents (38¿) tor tbe deposit, in tbe funds furnished for tbe purpose by the United States, except that ten per cent, of each partial payment shall be withheld until tbe completion of this contract to tbe satisfaction of tbe commanding officer of tbe bock Island Arsenal.”
At tbe time when the contract was entered into, the wing-dam which bad been erected by tbe Government existed, and it continued to exist when the work was in progress, and was then as effective as when tbe contract was made. During the progress of tbe work interruptions arose from two causes: First, from water coming over tbe wing-dam, or backing up from below; second, from water coming over and*through tbe cofferdam. On the part of tbe claimants it is contended that the defendants were bound to exclude all water from tbe area of excavation; and on tbe part of the defendents that tbe claimants bad sufficient time, notwithstanding tbe overflowing of their work after different intervals, to have completed it if they had exercised due diligence.
The court is of the opinion that tbe contract in this case cast upon tbe defendants tbe obligation of erecting a coffer-dam sufficient to exclude tbe water above it from entering tbe area of excavation for a period of forty-seven working days, all of which of right belonged to the claimants, and are found on tbe evidence to have been sufficient for tbe full performance of tbe work. Tbe failure of tbe defendants to comply with this condition of their agreement renders them liable, under the decision of tbe Supreme Court in Speed’s Case (8 Wallace; Eec., p. 77), and within tbe rule for tbe measure of damages therein laid dowu, for such damages as tbe claimants actually suffered from that cause, and for such profits as they might have made if they bad been enabled to perform. But tbe court is also of tbe opinion that the contract did not require tbe defendants to raise or strengthen tbe wing-dam (which was in existence when tbe contract was made), nor cast upon them any liability for water coming over it or through it. Of its sufficiency the claimants wrere as well able to judge, as tbe defendants when they entered into their agreement. And tbe court is likewise of tbe opinion that tbe provision in tbe contract which requires tbe defendants to keep “ open tbe water-ways in Benbam’s Island *68 Dam ” clid not cast upon them the obligation of excluding backwater which might find its way up the water-ways to the injury of the claimants. The only overflows for which the defendants were liable, in the opinion of the ,court, were such as might have been prevented by a sufficient coffer-dam.
The claimants have also sought to recover for additional expense thrown upon them by requiring them to blast a narrow channel through the area assigned to them instead of allowing them to excavate the full width of the area; but the court is-unable to find, either in the citations of counsel or in the printed record of the case, sufficient evidence to establish the fact that this mode of proceeding with the work was not voluntary on their part. *
The judgment of the court, in accordance with these views, is that the claimants recover of the defendants the sum of $7,707.